UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          ○

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-2591CAS (JCx) | | Date | August 3, 2009 |
|---|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|

| CATHERINE JEANG | Sandra Becerra | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Laurie Butler | Margarita Gevondyan |
| | George Fountain |

**Proceedings:**    **Defendants Bureau Veritas Consumer Products Services, Inc. and Bureau Veritas Consumer Product Services (Hong Kong) LTD's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and Motion to Strike Pursuant to Fed. R. Civ. P. 12(f)** (filed 6/15/2009)

**Defendant Bureau Veritas Hong Kong Ltd.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), Fed. R. Civ. P. 19, for Forum Non Conveniens and Pursuant to Fed. R. Civ. P. 12(b)(6), and Motion to Strike Pursuant to Rule 12(f)** (filed 7/6/2009)

## I.    INTRODUCTION AND BACKGROUND

On November 21, 2007, plaintiff Bleu Products, Inc. filed the instant action in Los Angeles County Superior Court against defendant Bureau Veritas Consumer Products Services, Inc. (a Massachusetts corporation) ("BVCPS-MA") and Does 1-50.  On February 28, 2008, plaintiff filed a first amended complaint ("FAC"), in which it added as defendants Bureau Veritas Consumer Product Services (Hong Kong) LTD. ("BVCPS-HK") and Bureau Veritas S.A. ("BV-SA").

Defendants BVCPS-MA and BVCPS-HK removed the instant action to this Court on April 18, 2008.  At the time of removal, BV-SA had not been served with the FAC.  On July 22, 2008, plaintiff dismissed defendant BV-SA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    ○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

On January 21, 2009, plaintiff filed a motion to amend its FAC. On March 9, 2009 the Court granted plaintiff's motion. Plaintiff filed its second amended complaint ("SAC") on March 23, 2009 against defendants BVCPS-MA, BVCPS-HK, Bureau Veritas Hong Kong Ltd.("BV-HKL"), BV-SA, Bureau Veritas Holding, Inc. (a Delaware Corporation) ("BVH"), Bureau Veritas International SAS ("BVIS") and Shanghai SIC-MTL Testing Co, Ltd. ("BV-Shanghai"). On April 30, 2009 the Court granted plaintiff's application for leave to file a third amended complaint ("TAC"). Plaintiff's TAC was filed the same day.

In its TAC, plaintiff alleges that it is in the business of designing and manufacturing apparel and selling that apparel to clothing retailers. TAC ¶ 1. Plaintiff alleges that it designed a ladies jacket to be sold by Costco Wholsale ("Costco"). Id. ¶¶ 2-3. Plaintiff alleges that it contracted with a factory in China for the manufacture of the jackets, and that the jackets were inspected and tested in China by defendants. Id. ¶¶ 3-4. Plaintiff alleges that defendants' inspection failed to detect a defect that caused buttons on the jacket to easily break off. Id. ¶ 4. Plaintiff alleges that, relying on an inspection report issued by defendants, plaintiff caused the jackets to be shipped from China to hundreds of Costco stores. Id. ¶ 5. Plaintiff alleges that Costco customers detected the button defect and that, had defendants' inspection detected the defect, plaintiff would have forced the factory to correct the defect before accepting the jackets. Id. Plaintiff's TAC asserts claims for: (1) breach of written contract; (2) fraud and deceit; (3) negligent misrepresentation; (4) negligence; and (5) breach of the covenant of good faith and fair dealing.

On June 15, 2009, defendants BVCPS-MA and BVCPS-HK filed a Motion to Dismiss pursuant to FRCP 12(b)(6) and Motion to Strike pursuant to FRCP 12(f). On July 6, 2009, defendant BV-HKL also filed a Motion to Dismiss pursuant to Fed R. Civ. P. 12(b)(2),  Fed R. Civ. P. 19, for Forum Non Conveniens and pursuant to Fed R. Civ. P. 12(b)(6), as well as a Motion to Strike pursuant to Fed R. Civ. P. 12(f). Plaintiff filed oppositions on July 20, 2009. Replies were filed on July 27, 2009. A hearing was held on August 3, 2009. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II.   LEGAL STANDARD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

### A.   Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965.

In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations.  Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|----------|---------------------|------|----------------|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

is proper under Rule 12(b)(6).  <u>United States v. City of Redwood City</u>, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986); <u>see</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000).

**B.     Motion to Strike Pursuant to Fed. R. Civ. P. 12(f)**

A motion to strike material from a pleading is made pursuant to Fed. R. Civ. P. 12(f).  Under Fed. R. Civ. P. 12(f), the Court may strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous."  A Fed. R. Civ. P. 12(f) motion is not a motion to dismiss for failure to state a claim upon which relief may be granted, and, where not involving a purportedly insufficient defense, simply tests whether a pleading contains inappropriate material.  The Court may also strike under Fed. R. Civ. P. 12(f) a prayer for relief which is not available as a matter of law.  <u>Tapley v. Lockwood Green Engineers</u>, 502 F.2d 559, 560 (8th Cir. 1974).  The essential function of a Fed. R. Civ. P. 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993), <u>rev'd on other grounds</u>, 510 U.S. 517 (1994).  Because of "the limited importance of pleadings in federal practice," motions to strike pursuant to Fed. R. Civ. P. 12(f) are disfavored.  <u>Bureerong v. Uvawas</u>, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).

**C.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(2)**

California's long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state law and federal due process are the same.  Cal. Civ. Proc. Code § 410.10; <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 620 (9th Cir. 1991).  In order for a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591 CAS (JCx) | | Date | August 3, 2009 |
|---|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | | |

justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).  Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.  A court has general jurisdiction over a nonresident defendant when that defendant's activities within the forum state are "substantial" or "continuous and systematic," even if the cause of action is "unrelated to the defendant's forum activities."  <u>Perkins v. Benguet Consol. Mining Co.</u>, 342 U.S. 437, 446-47 (1952); <u>Data Disc, Inc. v. Sys. Tech. Assoc., Inc.</u>, 557 F.2d 1280, 1287 (9th Cir. 1977).

The standard for establishing general jurisdiction is "fairly high" and requires that the defendant's contacts be substantial enough to approximate physical presence. <u>Bancroft & Masters, Inc. v. Augusta Nat'l Inc.</u>, 223 F.3d 1082, 1086 (9th Cir. 2000). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there."  <u>Id.</u> (finding no general jurisdiction when the corporation was not registered or licensed to do business in California, paid no taxes, maintained no bank accounts, and targeted no advertising toward California). Occasional sales to residents of the forum state are insufficient to create general jurisdiction.  <u>See</u> <u>Brand v. Menlove Dodge</u>, 796 F.2d 1070, 1073 (9th Cir. 1986).

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities.  <u>Rano v. Sipa Press, Inc.</u>, 987 F.2d 580, 588 (9th Cir. 1993).  The test for specific personal jurisdiction has three parts:

> (1) the defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws;
> (2) the claim must arise out of or result from the defendant's forum-related activities; and
> (3) exercise of jurisdiction must be reasonable.

<u>Id.</u>; <u>see</u> <u>also</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475-76 (1985).  The plaintiff bears the burden of satisfying the first two prongs, and if either of these prongs is not satisfied, personal jurisdiction is not established.  <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 802 (9th Cir. 2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | | Date | August 3, 2009 |
|---|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | | |

The purposeful availment prong is treated differently in a contracts case. Because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction," a court must evaluate four factors to determine whether this prong is met: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, (4) the parties' actual course of dealing. Burger King, 471 U.S. at 478-79.

If the plaintiff establishes the first two prongs regarding purposeful availment and the defendant's forum-related activities, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) the extent of the defendant's purposeful availment, (2) the burden on the defendant, (3) conflicts of law between the forum state and the defendant's state, (4) the forum's interest in adjudicating the dispute, (5) judicial efficiency, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991).

Where, as here, a court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001). Plaintiff's version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, supra, 27 F. Supp. 2d at 1181.

**D.     Forum non conveniens**

"The *forum non conveniens* determination is committed to the sound discretion of the trial court." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). "A party moving to dismiss based on *forum non conveniens* bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1118 (9th Cir. 2002)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

(citing <u>Lueck v. Sundstrand Corp.</u>, 236 F.3d 1137, 1142-43 (9th Cir. 2001)). "The plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country." <u>Id.</u> The Ninth Circuit has recognized that "the standard to be applied to a motion for dismissal on the ground of *forum non conveniens* is whether...defendants have made a clear showing of facts which...establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." <u>Id.</u> (quoting <u>Cheng v. Boeing Co.</u>, 708 F.2d 1406, 1410 (9th Cir. 1983))(internal brackets omitted). While there is a strong presumption in favor of plaintiff's choice of forum, "a foreign plaintiff's choice deserves less deference." <u>Id.</u> at 256. Nevertheless, "*[f]orum non conveniens* is 'an exceptional tool to be employed sparingly, not a...doctrine that compels plaintiffs to choose the optimal forum for their claim.'" <u>Dole Food Co.</u>, 303 F.3d at 1118 (quoting <u>Ravelo Monegro v. Rosa</u>, 211 F.3d 509, 514 (9th Cir. 2000)).

### E.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(7)

Federal Rule of Civil Procedure 12(b)(7) permits a Court to dismiss an action for failure to join a party whose presence is needed for just adjudication under Fed. R. Civ. P. 19. "Rule 19 of the Federal Rules of Civil Procedure sets forth considerations to guide a district court's determination whether a particular party should be joined in a suit if possible, referred to as a 'necessary party,' and, if so, whether, if the party cannot be joined, the suit should be dismissed because the absent party is 'indispensable.'" <u>Disabled Rights Action Comm. v. Las Vegas Events, Inc.</u>, 375 F.3d 861, 878 (9th Cir. 2004) (citations omitted).

Federal Rule of Civil Procedure 19(a)(1), which governs joinder of necessary parties, provides:

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The Ninth Circuit has held that a party may be "necessary" pursuant to Fed. R. Civ. P. 19(a) in either of two ways. Las Vegas Events, 375 F.3d at 879. First, under Fed. R. Civ. P. 19(a)(1), a party is necessary if complete relief cannot be granted in its absence. Id. "In conducting the Rule 19(a)(1) analysis, the court asks whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties." Id. Alternatively, a party is necessary pursuant to Fed. R. Civ. P. 19(a)(2), if the district court determines that "the absent party's participation is necessary to protect its legally cognizable interests or to protect other parties from a substantial risk of incurring multiple or inconsistent obligations because of those interests." Id. at 880. Such a legally cognizable interest must be more than a financial stake in the outcome of the litigation. Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir. 1990).[1] Finally, the moving party bears the burden of proving that joinder is necessary. Id. Once the court determines that a party should be joined, the court must determine whether joinder is feasible. Fed. R. Civ. P. 19(a)-(b).

If a necessary party cannot be joined the court must consider the following factors in deciding whether to dismiss the action because the party is indispensable[2]:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any

---

[1] "Rule 19(b) provides that if a person meeting the elements of Rule 19(a) cannot be joined, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Las Vegas Events, 375 F.3d at 878.

[2] Although the 2007 Amendment to Fed. Rule Civ. Proc. 19 made changes including the deletion of the word "indispensable," the Supreme Court has noted that such changes "were stylistic only" and that "the substance and operation of the Rule both pre- and post-2007 are unchanged." Republic of Philippines v. Pimentel, 128 S.Ct. 2180, 2184 (2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | | Date | August 3, 2009 |
|---|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | | |

prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  However, none of the aforementioned factors is dispositive. Instead, in the context of a particular case, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. ENC Corp., 464 F.3d 885, 891 (9th Cir. 2006).[3]

## III.   DISCUSSION

### A.   BVCPS-MA and BVCPS-HK's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and Motion to Strike Pursuant to Fed. R. Civ. P. 12(f)

#### 1.   Plaintiff's Claims for Breach of Contract and the Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's TAC alleges that in May 2006, plaintiff contracted with Costco for Costco to purchase 60,000 jackets to sell in Costco stores, and plaintiff subsequently contracted with a factory in China for the manufacture of the jackets.  Id.  Plaintiff alleges that on May 19, 2006, Costco sent plaintiff a "Textile Lab Test & Inspection Request Form" (the "Request"), and that plaintiff filled out the form and returned it to Costco, "with the understanding that COSTCO would forward it to the PRIMARY DEFENDANTS [i.e. BV-HKL, BVCPS-HK, BV-Shanghai, and BVCPS-MA]."  Id. at ¶ 54.  Plaintiff alleges that the Request expressly names BVCPS-MA, BVCPS-HK, and

---

[3] The determination of possible prejudice to an existing defendant or to an absent party under Fed. R. Civ. P. 19(b) is essentially the same as the analysis under Fed. R. Civ. P. 19(a).  Confederated Tribes of Chehalis Indian Reservation v. Lujan, 928 F.2d 1496, 1499 (9th Cir. 1991).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|----------|---------------------|------|----------------|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

BV-Shanghai. <u>Id.</u> Plaintiff alleges that sometime between mid-May and early-August 2006, Costco forwarded the request to the primary defendants, and that the primary defendants accepted it. <u>Id.</u> Plaintiff alleges that the Request specifies the textile laboratory tests and inspection to be done in China in accordance with the "test protocols." <u>Id.</u> at ¶ 55.

BVCPS-MA and BVCPS-HK (the "moving defendants") argue that plaintiff has failed to allege a contract between plaintiff and defendants, because the written contract on which plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims are based (the Request) is an agreement between plaintiff and Costco, not between plaintiff and the moving defendants. Mot. at 4. The moving defendants argue that, as a threshold matter, plaintiff must plead the essential elements of the existence of a valid contract as well as of a breach of contract claim.[4] [5] <u>Id.</u> at 4-5. The moving defendants argue that the Costco "Request" form does not: (1) identify any defendant as a party to the contract; (2) contain any material contract terms; and (3) specify the rights and obligations of either plaintiff or defendants with respect to one another. <u>Id.</u> at 5. The moving defendants further argue that plaintiff fails to allege any of the "benchmarks of a typical contract" such as a liquidated damages clause, a choice of law provision, or an arbitration clause. <u>Id.</u> at 5-6. In addition, the moving defendants argue that plaintiff does not show that Costco had the authority to enter in any contract on

---

[4] "[T]he essential elements to be pleaded in an action for breach of contract are: (1) the contract; (2) plaintiff's performance of the contract or excuse for nonperformance; (3) defendants' breach; and (4) the resulting damage to plaintiff." <u>Lortz v. Connell</u>, 273 Cal.App.2d 286, 290 (1969).

[5] Cal. Civ. Code § 1550 provides that:

It is essential to the existence of a contract that there should be:

1. Parties capable of contracting;
2. Their consent;
3. A lawful object; and,
4. A sufficient cause or consideration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|----------|---------------------|------|----------------|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

behalf of any of the defendants, or that defendants have any liability for any contracts entered into by Costco. Id. at 6. Finally, the moving defendants argue that the fact that they are listed as "Costco approved labs" in a portion of the Costco "Request" form is insufficient to constitute a binding contract, because the Request does not contain the signature of any labs and does not provide for any specific terms for inspection or testing. Id. Accordingly, the moving defendants argue that these claims should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Id.

Plaintiff responds that the TAC alleges, in "substantial detail," contracts to which the moving defendants were parties, and through which Costco served as their agent to make testing contracts with plaintiff and other vendors. Opp'n at 8-9. First, plaintiff argues that the TAC alleges that Costco had one or more contracts with defendants (the "BV/Costco Contracts"), which incorporate various protocols. TAC ¶ 48. One of the protocols referenced, plaintiff alleges, is the "test protocols," under which vendors (such as plaintiff) doing business with Costco are instructed by Costco to use the test and inspection services of primary defendants. Id. Plaintiff argues that the TAC alleges that BV/Costco contract sets forth the BV/Vendor procedure, whereby (1) Costco submits to the vendor (here, plaintiff) the Request form, (2) plaintiff returns the form to Costco, (3) Costco submits the form to defendants, (4) defendants conduct the inspection pursuant to standards described in the BV/Costco contracts, (5) the defendants send an inspection report of the test to plaintiff , and (6) defendants invoice plaintiff for the test and inspection services. TAC ¶ 49. The TAC then alleges that

> The REQUEST, as submitted by PLAINTIFF via COSTCO to the PRIMARY DEFENDANTS, served as PLAINTIFF'S order to the PRIMARY DEFENDANTS for work and services to be performed by them (hereinafter the 'TESTING CONTRACT'). The TESTING CONTRACT comprised a written contract memorialized by the REQUEST, which the parties understood in the context of the BV/VENDOR PROCEDURE. Alternatively, the TESTING CONTRACT comprised a contract implied by conduct, which conduct consisted of the parties following the BV/VENDOR PROCEDURE in connection with the REQUEST."

Opp'n at 9, citing TAC ¶ 56.

Thus, plaintiff argues that the TAC alleges that the Request served as plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|----------|---------------------|------|----------------|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

order to defendants, which was executed by Costco as the movants' agent under the BV/Costco contract.  Plaintiff argues that defendant is therefore incorrect in arguing that Costco had no authority to enter into contracts on behalf of defendant, because the TAC alleges that the BV/Costco contracts confers such authority on Costco.  Opp'n at 10; TAC ¶¶ 48-49.

Furthermore, plaintiff argues that defendants' motion fails to address plaintiff's alternative theory that a "testing contract" was implied by conduct pursuant to the BV/Costco contracts, with Costco acting as the moving defendants' agent.  Id. at 10. Accordingly, plaintiff argues that defendants' motion should be denied.  Id. at 11.

The moving defendants reply that plaintiff has failed to show that an express contract between plaintiff and any defendant exists, and that the TAC at most shows that Costco had separate contracts with both plaintiff and defendants.  Id.  The moving defendants argue that plaintiff's TAC admits that the "testing contract" upon which its claims are based "compromised a written contract memorialized by the Request," a contract to which neither moving defendant is a party.  Id., citing TAC ¶ 56, Opp'n at 9.

The moving defendants further argue that while, at most, plaintiff's allegations show that Costco may have acted to facilitate referral of inspection orders to defendants, nothing alleged in plaintiff's TAC authorized Costco to act as defendants' agent or created a binding contract between plaintiff and defendants.  Id. at 4.  The moving defendants argue that accepting plaintiff's allegations based on receipt of a request form from Costco would unfairly impose unforeseen liability on a third party.  Id.  The moving defendants argue that they had no contact with plaintiff that could be fairly considered the basis for formation of any contract.  Furthermore, defendants argue that although plaintiff's TAC alleges that plaintiff communicated a grievance to BVCPS-MA after the inspection occurred, this after the fact communication does not establish the existence of any prior contract.  Id.

Finally, moving defendants argue that the inspection itself was not performed by moving defendants, but was performed by BV-Shanghai.  Defendants note that plaintiff's TAC admits that it was BV-Shanghai that issued a report of the inspection entitled "Costco Apparel/Home Textiles Inspection Report ("Inspection Report") to Costco and plaintiff.  TAC ¶ 60.  Plaintiff, however, argues that moving defendants were the alter ego

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

of BV-Shanghai, and therefore may be held liable for BV-Shanghai's actions.  See Part III.A.4, *supra*.

The Court concludes that plaintiff has set forth sufficient allegations that an implied-in-fact contract existed between plaintiff and moving defendants so as to render dismissal inappropriate at this stage of the proceedings.  The essential elements of an implied-in-fact contract are mutual assent and consideration.  See Chandler v. Roach, 156 Cal.App.2d 435, 550 (1957).  It is undisputed that BV entities assented to perform an inspection of plaintiff's jackets and invoiced plaintiff for their services, and that plaintiff paid for these services pursuant to the invoice.  These allegations are sufficient so that they could establish an implied contract between plaintiff and the BV entities who performed the inspection services.  Furthermore, even if moving defendants did not actually carry out the inspection that is the subject of the implied contract, because the Court finds herein that plaintiff's alter ego allegations are sufficient to survive a motion to dismiss, moving defendants could conceivably be liable under the implied contract, and therefore dismissal of the moving defendants is inappropriate at this stage.

## 2.    Plaintiff's Claims for Fraud and Negligent Misrepresentation

The moving defendants argue that plaintiff's TAC does not plead fraud with the requisite particularity.  Mot. at 7, see, e.g., Tidenberg v. Bidz.com, Inc., 2009 WL 605249, *2  (C.D. Cal. Mar. 4, 2009) (To satisfy Rule 9(b), a plaintiff must plead "evidentiary facts, such as time, place, persons, statements, and explanations of why the statements are misleading").  The moving defendants argue that plaintiff's TAC is "devoid of any allegations" that plaintiff communicated with the moving defendants prior to or during inspection.  Id.  Instead, defendants argue, plaintiff did not communicate with defendants until after the inspection, when plaintiff paid the invoice and attempted to lodge a complaint.  Mot. at 7.  The moving defendants further argue that it was BV-Shanghai, not the moving defendants, who performed the inspection and issued the Inspection Report upon which plaintiff's fraud claim is partially based, and that therefore, plaintiff may not base its fraud claim against moving defendants on representations in the Inspection Report.  Id.  In addition, the moving defendants argue that, to the extent that plaintiff rests its fraud claim on representations on BV-Group's website, plaintiff has not alleged that it visited a "BV-GROUP" website containing general sales and marketing representations prior to the inspection.  Id.  Accordingly, the moving defendants argue

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | | Date | August 3, 2009 |
|---|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | | |

that, because the "essential elements of misrepresentation and reliance" have not been established against them, plaintiff's fraud claim should be dismissed. Id. at 7-8.

The moving defendants also argue that, because plaintiff's negligent misrepresentation claim differs from its fraud claim only in that it alleges negligent, rather than intentional misrepresentations, it too should be dismissed. Id. at 8.

Plaintiff responds that its TAC adequately alleges claims for fraud and negligent misrepresentation. Opp'n at 25. Plaintiff argues that the moving defendants overstate the holding in Tidenberg. Id. at 26. Specifically, plaintiff argues that "time, place, persons, and explanations" as to why statements are misleading are merely examples of evidentiary facts that a plaintiff could allege to meet the requirements, not a list of specific requirements. Id., citing Kaplan v. Rose 49 F.3d, 1363, 1370 (9th Cir. 1994) (". . .the allegations should include the misrepresentations themselves with particularity and, *where possible*, the roles of the individual defendants in the misrepresentations") (internal citation omitted) (emphasis added). Plaintiff further argues that its TAC contains substantial factual support for its allegations of fraud and negligent misrepresentation. Id. at 26-28. Specifically, plaintiff argues that the TAC alleges that the defendants represented, *through their agent Costco*, that primary defendants were capable of performing and had the requisite expertise to perform all obligations required by the "testing contract." Id. at 26, citing TAC ¶ 174.

In addition, plaintiff argues that even if the court finds that the moving defendants did not directly commit fraud, they are liable for alleged fraudulent representations made by BV-Shanghai in the Inspection Report and otherwise under an alter ego liability theory, as argued in Section III(A)(4), *infra*. Id. at 28.

The moving defendants reply that plaintiff "has failed to plead any representation by [the moving defendants] to plaintiff, let along a *false* one." Reply at 8. The moving defendants argue that plaintiff fails to allege any reliance on false representations made by the moving defendants. Id.

The Court finds plaintiff's allegations supporting their claims for fraud and negligent misrepresentation to be sufficient to defeat a motion to dismiss. Plaintiff has alleged with sufficient particularity that the representations contained within the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

inspection report were false, that defendants were aware of the falsity of those representations and intended to defraud plaintiff, that plaintiff relied on those false misrepresentations in importing the jackets, and that plaintiff was damaged as a result. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009). Furthermore, even if it was BV-Shanghai, and not moving defendants, that allegedly prepared the report that contains the alleged misrepresentation, because the Court finds herein that plaintiff's alter ego allegations are sufficient to defeat a motion to dismiss, moving defendants could conceivably be liable for the actions of BV-Shanghai.

### 3.     Plaintiff's Claim for Negligence

        "The elements of a negligence cause of action are: (1) a legal duty to use due care; (2) a breach of that duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care." Brown v. Ransweiler, 171 Cal.App.4th 516, 534 (2009). The moving defendants argue that, because "it is undisputed that [the moving defendants] had absolutely no direct involvement in the inspection," plaintiff has not and cannot plead "the essential element of a duty" against the moving defendants. Mot. at 8. Accordingly, the moving defendants argue that plaintiff's negligence claim should be dismissed.

        Plaintiff responds that both moving defendants were parties to the "testing contract" and that both made representations to plaintiff prior to inspection of the jackets through defendants' agent, Costco. Opp'n at 28. Plaintiff also argues that the TAC alleges that BVCPS-MA received a copy of the Inspection Report prepared by BV-Shanghai by email on August 14, 2006, and argues that this would have been sufficient time for BVCPS-MA to take action to correct the report prior to the shipment of the jackets from China to Costco. TAC ¶ 60; Id. at 28-29. Plaintiff further argues that the moving defendants are liable for negligence as alter egos of BV-Shanghai, as argued in Section III(A)(3), *infra*. Id.

        The moving defendants reply that plaintiff's TAC "contains no allegations of any relationship or communication with plaintiff prior to or during the inspection (performed by BV-Shanghai) that create any duty on the part of" the moving defendants. Reply at 9, see Hegyes v. Unjian Enterprises, Inc., 234 Cal.App.3d 1103, 1111 (1991) ("A complaint which lacks allegations of fact to show that a legal duty of care was owed is fatally

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

defective.") (internal citation omitted).  The moving defendants argue that, according to plaintiff's TAC, the moving defendants had no involvement with Costco or plaintiff's allegations until "long after the inspection and report were issued." Id. at 9-10. Accordingly, the moving defendants argue that the allegations in the TAC negate the possibility that the moving defendants could possibly owe a retroactive duty to plaintiff based on the conduct of the inspection.  Id. at 10.

The moving defendants further argue that any alleged breach caused by their conduct cannot be the proximate cause of plaintiff's alleged injury.  Id.  The moving defendants argue that, whereas the TAC alleges that BVCPS-MA breached a duty to plaintiff by receiving a copy of the Inspection Report in time to "take action to correct the falsity thereof," the TAC does not allege that BVCPS-MA had the duty or authority to review the Inspection Report or take any action to verify it.  Id.  The moving defendants further argue that any allegedly negligent conduct cannot be the proximate cause of the negligent inspection because the inspection had already taken place before the moving defendants received the report.  Id.  Accordingly, the moving defendants argue that plaintiff cannot establish the existence of "*post-hoc* duty to prevent negligence in an inspection that plaintiff alleges had already taken place" or the proximate cause necessary to hold the moving defendants liable under a theory of negligence.  Id.

The Court finds dismissal of plaintiff's negligence claim to be inappropriate.  As explained in Part III(A)(4), *infra*, plaintiff has adequately alleged that moving defendants are alter egos of BV-Shanghai.  Therefore, moving defendants could conceivably be liable for any alleged negligence of BV-Shanghai in preparing the report and carrying out the inspection under the alleged implied-in-fact contract.

**4.      Alter Ego Liability**

The alter ego doctrine "arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests."  Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003).  Under California law, "[w]hether alter ego applies is a question of fact which necessarily varies according to the circumstances of each case."  Inst. of Veterinary Pathology, Inc. v. Cal. Health Labs., Inc., 116 Cal. App. 3d 111, 119 (1981).  However, in order for alter ego liability to apply, two conditions must be met: "(1) such a unity of interest in ownership exists so as to dissolve the separate corporate personalities of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | | Date | August 3, 2009 |
|---|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | | |

parent and the subsidiary, relegating the latter to the status of merely an instrumentality, agency, conduit or adjunct of the former, and (2) an inequitable result will occur if the conduct is treated as that of the subsidiary alone." Id.  In other words, the plaintiff must show "specific manipulative conduct by the parent toward the subsidiary which relegates the latter to the status of merely an instrumentality, agency, conduit or adjunct of the former." Laird v. Capital Cities/ABC, Inc., 68 Cal. App. 4th 727, 742 (1998) (quoting Veterinary Pathology, 116 Cal. App. 3d at 119-120).[6]

The moving defendants argue that, other than general allegations that defendants held themselves out as a unified entity, and that BV-SA provided services typical of a parent-subsidiary relationship, plaintiff's claims against the moving defendants are based on conclusory statements that each entity "was and still is an agent, department, alter ego, and/or instrumentality of" the others and that such statements are too conclusory to survive a motion to dismiss. Id., see, e.g. Nava v. Virtualbank, 2008 U.S. Dist. LEXIS 72819, at *32 (E.D. Cal. July 16, 2008) (holding conclusory allegations of an alter ego relationship insufficient to allege alter ego liability); Neilson v. Union Bank of California, N.A., 290 F.Supp.2d 1101, 1116 (C.D.Cal. 2003) ("conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each") (internal citation omitted).  The moving defendants argue that plaintiff's failure to allege specific facts as

---

[6] Plaintiff argues that the Court should apply the federal law test for alter-ego liability.  The federal test is substantially similar to the state test, except that the federal test allows a plaintiff to prevail if they show either an inequitable result or fraudulent intent by the incorporators.  See UA Local 343 United Ass'n of Journeymen, et al v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1475 (9th Cir. 1994) (internal citation omitted) ("In deciding whether to pierce the corporate veil, [federal courts] consider three factors: '(1) the amount of respect given to the separate identity of the corporation by its shareholders, (2) the degree of injustice visited on the litigants by recognition of the corporate entity, and (3) the fraudulent intent of the incorporators. . . Appellees must prevail on the first threshold factor and on one of the other two.'").  However, this case is before the Court under its diversity jurisdiction.  Therefore, California law on alter ego laibility controls.  See Whitney v. Arntz, 2009 U.S.App. LEXIS 6847 *2 (9th Cir. 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|----------|---------------------|------|----------------|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

to whether defendants utilized one another's assets, commingled funds, controlled each other's finances, shared officers or directors, or were undercapitalized deprived defendants of notice as to the claims against them.  Id. at 10-11.

The moving defendants further argue that plaintiff's alter ego claim appears to rest on the allegation that a Bureau Veritas website represents defendants as a "global entity." Id.  The moving defendants argue that, even if they are part of a large global organization, this fact alone does not imply that defendants utilized one another's assets, commingled funds, controlled each other's finances, shared officers or directors, or were undercapitalized.  Id.  The moving defendants further argue that the fact that subsidiaries are members of the same corporate 'family' does not destroy their separate existence.  Id., see, e.g. Amer. Trading & Prod. Corp. v. Fischbach & Moore, Inc., 311 F.Supp. 412, 416 (D.C.Ill. 1970) (". . .it has long been the law that the corporate entity is only ignored when the ends of justice require it.") (internal citations omitted).

Moreover, the moving defendants argue that the alter ego doctrine is properly used to establish liability against a *parent company* or *equitable owner* where abuse of the corporate privilege justifies holding an equitable owner liable for the actions of the corporation.  Id. at 12-13, see Roman Catholic Archbishop v. Superior Court,  15 Cal.App.3d 405, 411 (1971).  The moving defendants argue that  plaintiff's TAC fails to allege that the moving defendants are the 'owners' of the alleged worldwide "BV-GROUP".  Id. at 13.  Moreover, the moving defendant argue that plaintiff's TAC acknowledges that the moving defendants are "merely a small part of the Bureau Veritas 'family.'"  Id.

Lastly, the moving defendants argue that plaintiff has not established that inequity would result from the dismissal of the moving defendants.  Id.  Under the alter ego doctrine, plaintiff must allege that, if the acts in question "are treated as those of the corporation alone, an inequitable result will follow."  See, e.g. Automotriz Del Golfo De California S. A. De C. V. v. Resnick, 47 Cal.2d 792, 796 (1957) (internal citations omitted).  The moving defendants argue that "there is not even a suggestion of any inequitable result in the TAC."  Mot. at 14.  The moving defendants further argue that plaintiff has served defendants BV-HKL, BV-SA and BV-IS with the TAC.  Id. Accordingly, the moving defendants argue that no inequity will result from their dismissal because plaintiff can proceed against the remaining defendants.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|----------|---------------------|------|----------------|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

Plaintiff responds that the TAC adequately pleads alter ego liability. Opp'n at 11. Plaintiff argues first that the first prong of the alter-ego test is satisfied. Opp'n at 13. Plaintiff notes that the TAC states that "BV-Group has undertaken a two-pronged global strategy . . . for the wrongful and despicable purposes of (1) maximizing the profit of globalization while (b) evading the responsibilities of globalization." TAC ¶ 83. The first prong of this global strategy is that BV-SA and the 250+ subsidiaries act as one. TAC ¶ 84. The second prong is that BV-SA and the 250+ subsidiaries claim to be separate entities, isolated from one another by a network of corporate veils. Id. The TAC alleges that this separation is a sham, because BV-Group acts as a single corporate entity and that certain "Top Executives" are utilizing BV-Group for the purposes of perpetrating frauds and other wrongs against customers. Id.

Plaintiff argues that the fact that neither moving defendant is the equitable owner of BV-Group is irrelevant because the TAC contains other allegations by which the moving defendants are liable under the alter ego theory for the conduct of BV-Shanghai, the entity that delivered the allegedly fraudulent report to plaintiff. Id. With regard to BVCPS-HK, plaintiff first argues that it can reasonably be inferred that (1) one way BV-SA exerts pervasive control over BV-Shanghai is through intermediate subsidiaries, including BVCPS-HK, which owns 60 percent of BV-Shanghai; and (2) that therefore BVCPS-HK exerts pervasive control over BV-Shanghai. Id. at 14. Accordingly, plaintiff argues that it has pled facts sufficient to establish the first prong for alter ego liability against BVCPS-HK. Id. Plaintiff further argues that the TAC also contains allegations sufficient to establish that BV-SA also exerts pervasive control over BV-SHANGHAI through BVCPS-MA. Id. Specifically, plaintiff argues that the TAC alleges that BVCPS-MA: (1) was responsible for setting up test protocols that governed the inspections performed by BV-Shanghai; (2) was directly involved in monitoring the inspections; and (3) responded by telephone to plaintiff's complaint concerning the inspection. Id. at 14-15, citing TAC ¶¶ 26-29, 68. Plaintiff further argues that the TAC alleges that BVCPS-MA: (1) was responsible for establishing contracts to which BV-Shanghai is alleged as a party; (2) is named in the Costco "Request" form; and (3) caused BV-Shanghai to perform the inspection as an alter ego of other named defendants. Id. at 15. Finally, plaintiff argues that, under the single-enterprise rule, BVCPS-MA can be found liable as an alter ego of BV-Shanghai in spite of the fact that BVCPS-MA and BV-Shanghai are sister companies. Id., citing Las Palmas Associates v. Las Palmas Center Associates, 235 Cal.App.3d 1220, 1249 (1991) ("Generally, alter ego liability is reserved

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

for the parent-subsidiary relationship. However, under the single-enterprise rule, liability can be found between sister companies.").

Plaintiff argues that the TAC alleges fraudulent intent on behalf of the defendants. For example, plaintiff argues that the moving defendants knew that an inspection report was fraudulent prior to shipment of the jackets, and that BVCPS-MA directly participated in evading responsibility by calling plaintiff and launching an allegedly phony investigation.  Id., citing TAC ¶¶ 68-69.  Plaintiff also argues that the TAC alleges that moving defendants have engaged in fraudulent activities in the course of this litigation, including: (1) filing declarations containing false statements; (2) filing an initial disclosure concealing the existence of BV-HKL and BV-Shanghai; and (3) stating that two witnesses were employees of BVCPS-HK only to later state that the same witnesses were actually employees of BV-HKL.  Id., citing TAC ¶¶ 155-158, 161-162 and 167; see Part III(A)(6), *supra*.

Plaintiff argues that because it has demonstrated fraudulent intent, it may be inferred that the second prong of the California test (inequitable result) is also satisfied. Id. at 18.  Plaintiff argues that to permit the moving defendants "to perpetrate the above-described frauds and misdeeds with impunity would promote injustice and make it inequitable for [the moving defendants] to escape liability."  Id. at 18; see, e.g., Pan Pac. Sash & Door Co. v. Greendale Park, Inc., 166 Cal.App.2d 652, 659 (1958) (". . .an adherence to the fiction of a separate existence of the two corporations would, under the circumstances here present, promote injustice and make it inequitable for Greendale to escape liability").

Lastly, plaintiff argues that it has alleged alter ego liability with particularity as required by the heightened pleading standards of Fed. R. Civ. P. 9(b).  Id. at 18-19. Plaintiff argues that the moving defendants ignore the detailed factual allegations contained in the TAC and falsely assert that plaintiff's claims rest solely on conclusory allegations.  Id. at 19.  Plaintiff further argues that the cases cited by the moving defendants for the proposition that membership of subsidiaries in a corporate family does not destroy their separate existence are factually distinguishable because of the extensive involvement of the parent company in the present case.  Id. at 21-23.

The moving defendants reply that plaintiff fails to plead alter ego liability with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|----------|---------------------|------|----------------|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

particularity, because plaintiff fails to allege specific offending acts such as the "commingling of one another's assets," "sharing common officers or directors," "controlling each other's finances," or that the parent engaged in "specific manipulative conduct [] toward the subsidiary which relegates the latter to the status of merely an instrumentality."  Reply at 6, see Laird v. Capital Cities/ABC, Inc.,  68 Cal.App.4th 727, 742 (1998).  The moving defendants argue that the existence of an intermediary subsidiary does not compel the inference that the intermediary "must therefore be exerting 'pervasive control' over its sister entity."  Id.

    The moving defendants further note that, in arguing that "one way BV-SA exerts pervasive control over BV-Shanghai is through its intermediary subsidiaries, BVIS and BVCPS-HK", plaintiff "casts an impermissibly wide net by alleging that many different entities with no formal relationship with each other somehow each *separately* exert '*pervasive control*' over BV-Shanghai."  Id. at 6-7.  The moving defendants argue that permitting such a "hollow and conclusory allegation to support alter ego liability against BVCPS-HK eviscerates the heightened pleading standard requiring that plaintiff reasonably allege *how* the particular entity *is* in fact exercising *pervasive control*."  Id. at 7.  The moving defendants also argue that plaintiff's "purported allegation that BVCPS-MA [which plaintiff admits has no ownership of BV-Shanghai] is 'pervasively controlling' BV-Shanghai merely because it is mentioned in the disputed contract" is insufficient to establish alter ego liability against BVCPS-MA.  Id.  The moving defendants argue that because plaintiff fails to: (1) allege intentional misuse of the corporate form in order to perpetrate a fraud or avoid an obligation to plaintiff; and (2) fails to allege that inequity will result if the moving defendants are not treated as alter egos and are thus dismissed from the case, the moving defendants should be dismissed. Id. at 8.

    The Court finds that plaintiff's have alleged sufficient facts supporting alter ego liability.  First, plaintiff has alleged with sufficient facts to support its theory of a unity of interest and ownership exists such that separate personalities of the corporation no longer exist.  See Oddenino & Gaule v. United Financial Group, 1999 U.S. App. LEXIS 29506 (9th Cir. 1999).  For example, in support of its "single enterprise theory," plaintiff has alleged that a few individuals exercised a great deal of control over the various BV entities, that different BV entities share virtually identical addresses, and that the various entities share human resources  See Las Palmas, 235 Cal. App. 3d at 1249.  Furthermore,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

plaintiff has sufficiently alleged intent on the part of defendants to defraud the public through concealment of the nature of the single enterprise and misrepresentation of the corporate structure, and has adequately set forth allegations that could lead to a finding of inequitable result.  See Oddenino, 1999 U.S. App. LEXIS 29506 at *5 ("the purpose of the alter ego doctrine is to afford such creditors protection where some conduct amounting to bad faith makes it inequitable . . . for the equitable owner of a corporation to hide behind its corporate veil").  Therefore, the Court finds dismissal of the alter ego allegations at this stage of the proceedings to be inappropriate.

### 5.    Plaintiff's Request for Punitive Damages

The moving defendants argue that plaintiff has not pled facts justifying the imposition of punitive damages.  Mot. at 14.  The moving defendants argue that plaintiff fails to specifically plead that the moving defendants acted with "oppression, fraud and malice," and that merely pleading the terms "oppression, fraud and malice" is conclusory absent sufficient factual allegations.[7]  Id., citing Perkins v. Sup.Ct.,117 Cal.App.3d 1, 6 (1981).  The moving defendants further argue that plaintiff fails to allege any malicious or intentionally fraudulent conduct on the part of the moving defendants, "much less conduct that is vile, base, or contemptible." [8]  Id. at 15, see College Hospital Inc. v. Sup.

---

[7]Cal. Civ. Code § 3294 provides, in pertinent part, that:

(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant

[8]Cal. Civ. Code § 3294 provides, in pertinent part, that:

(c) As used in this section, the following definitions shall apply:

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

O

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

<u>Ct.</u>, 8 Cal.4th 704, 725 (1994) (Section 3294(c)'s "reference to 'despicable' conduct seems to represent a new substantive limitation on punitive damage awards. Used in its ordinary sense, the adjective 'despicable' is a powerful term that refers to circumstances that are 'base,' 'vile,' or 'contemptible.'").

Plaintiff responds that the moving defendants were direct participants in a scheme to profit based on Bureau Veritas's reputation for "purported 'ethics,' while simultaneously evading responsibility" for the allegedly unethical conduct of their employees. Opp'n at 29. Plaintiff argues that the moving defendants are among the named defendants whose employees knew that the jackets contained defective buttons "in catastrophic numbers, and intentionally omitted this crucial fact from the report." <u>Id.</u>, citing TAC ¶¶ 75-77. Plaintiff argues that such conduct is oppressive, fraudulent, malicious, contemptible and despicable and is supported by specific factual allegations. <u>Id.</u> Finally, plaintiff argues that the moving defendants are liable for punitive damages as alter egos of BV-Shanghai. <u>Id.</u>

Because the Court finds herein that plaintiff has sufficiently alleged fraudulent conduct on the part of defendants, the Court finds that dismissing plaintiff's claim for punitive damages at this stage of the proceeding would be inappropriate.

### 6. Plaintiff's Allegations Concerning Declarations Filed by Attorneys During the Course of Litigation

The moving defendants argue that, pursuant to Fed. R. Civ. P. 12(f), the Court should strike allegations concerning declarations filed by attorneys in the course of litigation in this action and in another action currently pending in the Western District of New York (the "Playwell case"), which are contained in paragraphs 148-167 of plaintiff's TAC. Mot. at 16. The moving defendants argue that the statements are "improper, immaterial and scandalous" and are privileged pursuant to Cal. Civ. Code §47(b). <u>Id</u>, citing Cal. Civ. Code §47(b) (unless an exception applies, publication or broadcast in a judicial proceeding is privileged); <u>Lopez Reyes v. Kenosian & Miele, LLP</u>, 525 F. Supp. 2d 1158, 1161 (N.D. Cal 2007) ("[t]he California litigation privilege applies to any publication or broadcast made in any judicial proceeding . . . it is absolute in nature and is now held applicable to any communication whether or not it amounts to a publication, and all torts except malicious prosecution").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

In the complaint paragraphs that are the subject of defendants' motion to strike, plaintiff alleges that defendants have committed actions of fraud against the Court, and that these acts further support plaintiff's general allegations that defendants' use of the Bureau Veritas global subsidiary network to perpetrate a fraud entitles plaintiff to pierce the corporate veil to reach BV-SA. Id. ¶ 150. Plaintiff alleges that BV-Group's Litigation Management Department is controlling the alleged fraudulent actions arising in litigating the instant action as well as another action pending in the United States District Court for the Western District of New York (the "Playwell case").[9] TAC ¶ 148.

Specifically, plaintiff's TAC alleges that in a motion for summary judgment filed on or about December 15, 2008 in the Playwell case, defendant BV-SA filed a document (the "New York Separate Statement") which states that BV-SA is a foreign corporation authorized to do business in the state of New York, and that this admission comports with a NYS Department of State ("NYSDOS") printout. Id. ¶¶ 152-54. Plaintiff alleges that, on or about February 9, 2009, the moving defendants filed a declaration (the "Surrender Declaration") in the instant action setting forth a Certificate of Surrender of Authority of Bureau Veritas filed by BV-SA with the NYSDOS for the purpose of arguing that BV-SA should not be reinstated as a defendant. Id. ¶ 155. Plaintiff alleges that the Surrender Declaration states that BV-SA ceased to do business in New York on December 31, 1991, contradicting both the New York Separate Statement and NYSDOS printout, thereby perpetrating a fraud on this Court consistent with the "much larger fraud" perpetrated by defendants. Id. ¶¶ 157-58.

Plaintiff further alleges that it named only BVCPS-HK and not BV-HKL as a defendant in its first amended complaint in this action under the mistaken but reasonable belief that the two corporations were actually the same company as a result of their deceptively similar names, addresses and email addresses. Id. ¶¶ 159-60. Plaintiff alleges that defendant BV-SA attempted to conceal the separate existence of BV-HKL from the Court, omitting any mention of BV-HKL in its Initial Disclosure filed on or

---

[9] Plaintiff states that it is not making allegations against non-executive attorneys, as these attorneys executed documents upon instruction from BV-Groups' Litigation Management Department without knowledge of the frauds alleged by plaintiff. Id. ¶ 149.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|----------|---------------------|------|----------------|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

about August 1, 2008 pursuant to Fed. R. Civ. P. 26. Id. ¶¶ 160-61. Plaintiff further alleges that, in an opposition filed on February 6, 2009, the moving defendants identify two employees previously referred to as employees of BVCPS-HK as employees of BV-HKL. Id. ¶ 162. Plaintiff alleges that these two "contradictory representations constitute a fraud on this Court consistent with the "much larger fraud" perpetrated by defendants. Id. ¶ 163.

Plaintiff also alleges that BV-Shanghai has five names that "look completely different from its formal name," and that none of these other names suggest that BV-Shanghai is anything other than a division or local office of defendant operating in China. Id. ¶¶ 164-65. Plaintiff alleges that it did not name BV-Shanghai in its first amended complaint because plaintiff's counsel reasonably believed that BV-Shanghai had no involvement in the jacket inspection. Id. ¶ 166. Plaintiff further alleges that BV-SA then attempted to conceal from the Court the fact that BV-Shanghai performed the inspection and issued the report by using an "elusive dba" in its initial disclosure, thus perpetrating a fraud on this Court consistent with the "much larger fraud" perpetrated by defendants. Id. ¶ 167.

Plaintiff argues that of the twenty paragraphs in the TAC that defendant seeks to strike, only the three paragraphs that reference the New York Separate Statement "might conceivably be protected by the litigation privilege." Opp'n at 23. Plaintiff argues that the other seventeen paragraphs contain information that is not subject to the litigation privilege including: (1) general information about the "Playwell Case;" (2) explanations as to why attorneys are not being sued; (3) general statements about alleged fraud by defendants; (4) a description of a printout from the "NYDOS" website; (5) descriptions of declarations, disclosures and an opposition filed by the moving defendants in the instant action; (6) a discussion of a corporate status change; (7) a discussion of the similarities of names and addresses of BVCPS-HK and BV-HKL; (8) a description of statements made by defendants in the instant action; and (9) a description of the "many names of BV-Shanghai and why plaintiff did not initially sue BV-Shanghai." Id. at 23-24, citing TAC ¶¶ 148-151, 154-157, and 159-167.

Furthermore, plaintiff argues that the litigation privilege does not apply to the New York Separate Statement. Plaintiff argues that the gravamen of its complaint is the defendants' allegedly fraudulent "two-pronged global strategy" and intentional omission

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

of the jacket defect from the report, and that the New York Separate Statement is "but a small piece in a large puzzle of non-privileged conduct" by defendants.  Id.; see, e.g. Lopez Reyes, 525 F.Supp.2d at 1162 (". . . unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies").  Accordingly, plaintiff argues that nothing in the TAC is subject to the litigation privilege.  Id.

The Court concludes that moving defendants have not demonstrated that the cited paragraphs of the complaint should be stricken.  Nothing in the allegations contained therein is so "immaterial, impertinent, or scandalous" as to merit granting a motion to strike, which is a disfavored remedy.  See Bureerong, 922 F. Supp. at 1478.  Furthermore, moving defendants have failed to show that any allegations contained within the paragraphs at issue are subject to the litigation privilege set forth in Cal. Civ. Code §47(b).

**B.     BV-HKL's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), Fed. R. Civ. P. 19, for Forum Non Conveniens and Pursuant to Fed. R. Civ. P. 12(b)(6), and Motion to Strike Pursuant to Rule 12(f)**

**1.     Whether the Court Can Exercise Personal Jurisdiction Over BV-HKL**

BV-HKL argues that, even in cases in which both a parent company and subsidiary are named defendants, "[e]ach defendant's contacts with the forum State must be assessed individually." Mot. at 5, see Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 802, n.13 (1984) (internal citation omitted).  BV-HKL argues that it does not have the "minimum contacts" with California required for the Court to exercise personal jurisdiction over it.  Id., see International Shoe Co. v. Washington, 36 U.S. 310, 316 (1945).

**a.     General Jurisdiction**

BV-HKL argues that its activities in California "are non-existent, and far from substantial, continuous or systematic" as required for the Court to exercise general jurisdiction.  Id. at 6.  Specifically, BV-HKL argues that it: (1) is not registered to do

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|----------|---------------------|------|----------------|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

business in California; (2) has no agent for service of process in California; (3) has no subsidiaries incorporated or registered to do business in California; (4) has no officers, employees or salespeople pursuing leads in California; (5) does not advertise or maintain branch offices in California; (6) owns no property and has no bank accounts, telephone listings or mailing addresses in California; and (7) has never held a meeting or directly solicited business in California. Id. BV-HKL further argues that the events upon which plaintiff's case is based occurred in China. Id. at 6-7. Lastly, BV-HKL argues that, while it does maintain a generally accessible website, the website is not "purposefully directed" at California. Id. at 7, see Nicosia v. De Rooy, 72 F.Supp.2d 1093, 1098 (N.D.Cal. 1999) ("Purposeful availment is not satisfied by merely creating a web-site accessible by residents of the forum state.") (internal citation omitted). Accordingly, BV-HKL argues that there is no basis for the Court to assert general jurisdiction over it. Id.

Plaintiff responds that it is one of hundreds of Costco vendors in California who do business with the defendants, including BV-HKL. Opp'n at 13. In fact, plaintiff notes that the TAC alleges that BV-HKL, prior to the incident that gave rise to this lawsuit, conducted inspections for plaintiff on nine separate occasions, and signed and delivered nine inspection reports to plaintiff. TAC ¶ 36. Plaintiff notes also that the TAC alleges that BV-HKL is a party to the BV/Costco contracts. Opp'n at 13. Accordingly, plaintiff argues that BV-HKL does substantial, continuous and systematic business in California so as to subject itself to general jurisdiction in California. Id.

BV-HKL replies that plaintiff has not alleged that any defendant, BV-HKL included, "discussed, negotiated or entered into any contract in California or that the performance of any such contract was to occur in California." Id.

The Court concludes that BV-HKL has demonstrated that its ties with California are not sufficiently "substantial, continuous or systematic" so as to warrant exercising general jurisdiction.

### b.    Specific Jurisdiction

### i.    Purposeful Availment

BV-HKL argues that it has not purposefully availed itself of the privilege of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

conducting business in California.  Mot. at 8.  BV-HKL argues that while it sent an invoice to plaintiff in California for the inspection at issue in this lawsuit, it did not engage in significant activities in California or create continuing obligations between itself and any California resident, including plaintiff.  Id.; see Gray & Co. v. Firstenberg Machinery Co., Inc., 913 F.2d 758, 760 (9th Cir. 1990) ("A defendant has purposely availed himself of the benefits of a forum if he has deliberately 'engaged in significant activities within a State or has created 'continuing obligations' between himself and the residents of the forum.'") (quoting Burger King, 471 U.S. at 475-475).  BV-HKL argues that its only contacts with California, including administrative activities such as sending an invoice to a customer and maintenance of a website accessible from, but not directed at, California, are too isolated and sporadic to confer jurisdiction.  Id. at 9; see Nicosia, 72 F.Supp.2d at 1098.

In addition, BV-HKL argues that plaintiff's jurisdictional argument based on the contention that BV-HKL "contracted" to supply inspection services fails because: (1) plaintiff's TAC and documentation show that no contract existed between plaintiff and any defendant, including BV-HKL; and (2) assuming  a contract *did* exist, plaintiff's "unilateral decision" to have the results of the testing performed in China by BV-SHANGHAI sent to California cannot constitute "purposeful availment" on the part of BV-HKL.  Id.; see, e.g. Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1478 (9th Cir.1986) ("the purposeful availment analysis turns upon whether the defendant's contacts are attributable to 'actions by the defendant himself,' or conversely to the 'unilateral activity of another party.'") (internal citation omitted).  BV-HKL argues that, "ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'" Id. at 10, see Roth v. Garcia Marquez, 942 F.2d 617, 622 (9th Cir. 1991).  Lastly, BV-HKL argues that, even if it could have foreseen possible injury to plaintiff in California, there would still be no basis for the Court to exercise jurisdiction.  Id., see Burger King, 471 U.S. at 474 ("the Court has consistently held that . . . [foreseeability of injury] is not a "sufficient benchmark" for exercising personal jurisdiction) (internal citation omitted).

Plaintiff responds that, prior to entering into the BV/Costco contracts, BV-HKL had already engaged in a pattern of purposeful interjection of its activities into California, via the nine prior inspections reports delivered to plaintiff in California.   Opp'n at 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|----------|---------------------|------|----------------|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

Furthermore, plaintiff argues that BV-HKL has contact with California and availed itself of California law via communications with plaintiff, in particular, the August 20, 2006 invoice that BV-HKL sent to plaintiff for the jacket inspection. Plaintiff argues that at the time of invoicing, 42,000 of the jackets remained in China, and therefore, BV-HKL was in a position to cause the inspection report to be amended to indicate the defective buttons, so as to stop shipment. Opp'n at 9. Plaintiff argues that BV-HKL failed to do so. Plaintiff argues that BV-HKL's contacts with California arose when Costco, as BV-HKL's agent, "reached out beyond" Hong Kong to vendors located in California. Id. at 18.

Plaintiff further argues that Roth, 942 F.2d 617, is inapposite because the line of cases supporting it all sound in contract, whereas plaintiff's TAC alleges an intentional tort. Id. Plaintiff argues that the "purposeful availment" prong is satisfied in the intentional tort context when a "defendant allegedly ha[s] (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Dole Food Co., 303 F.3d at1111 (internal citation omitted); see also Lewis v. Fresne, 252 F.3d 352, 359 (5th Cir. 2001) ("[t]here have been other cases where mere communications or negotiations with a resident of the forum state were not enough to subject non-resident defendants to the forum state's jurisdiction . . . these cases did not, however, involve an intentional tort."). Plaintiff also argues that the TAC alleges that BV-HKL committed an intentional tort by invoicing and receiving payment from plaintiff based on an inspection report that intentionally misrepresented the inspection. Id.

BV-HKL replies that plaintiff fails to explain "how simply forwarding inspection reports and communications related to reports constitute any 'substantial connection' to California." Reply at 5.

BV-HKL further argues that, even if plaintiff establishes that it had a contract with BV-HKL, "a contract alone is not sufficient" to establish purposeful availment. Id., citing Burger King, 471 U.S. at 478-79. BV-HKL argues that receipt of a financial benefit from a "collateral relation" to California alone is insufficient to confer jurisdiction. Id. at 5-6, citing Pacific Atlantic Trading Co., Inc. v. M/V Main Exp., 758 F.2d 1325, 1329 (9th Cir. 1985). BV-HKL further argues that the performance of any "contract" occurred in China, and that BV-HKL's "only relation to California was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591 CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

serving as a conduit of information by sending plaintiff the report, the invoice and assisting plaintiff with its complaint." Id. at 6.

Lastly, BV-HKL argues that, to the extent that plaintiff contends that BV-HKL participated in an intentional tort, the actions comprising the alleged intentional tort all took place in China. Id. BV-HKL further argues that it did not perform the inspection or issue the report that give rise to plaintiff's intentional tort claim, and instead merely forwarded inspection reports and invoices to plaintiff and investigated plaintiff's complaint. Id.

### ii.    Whether Plaintiff's Claims Arise From BV-HKL's Forum-Related Activities

BV-HKL argues that, for jurisdictional purposes, an action arises out of contacts with a forum if, "but for" those contacts, the action would not have arisen. Mot. at 10, see Shute v. Carnival Cruise Lines, 897 F.2d 377, 385 (9th Cir. 1990). BV-HKL argues that it has no continuous or regular activities in California, and that all of the activities upon which plaintiff's suit is based occurred in China. Id. BV-HKL further argues that, because the only contact between BV-HKL and California was the invoice sent to plaintiff's California address, "the exercise of specific jurisdiction . . .[over BV-HKL] would be manifestly improper." Id.

Plaintiff responds that BV-HKL is being sued as a result of its being a party to the BV/Costco contracts and the alleged "testing contract" with plaintiff made thereunder. Opp'n at 21. Plaintiff also argues that, in part, its claims arise from the preparation and issuance of the report at issue (with BV-Shanghai or as its alter ego) as well as the invoice sent to plaintiff  and payment received from plaintiff prior to the shipment of most of the jackets from China to Los Angeles. Id. at 21-22. Plaintiff argues that, because BV-HKL made "contacts with the forum at the time of the events underlying the dispute," the "arising from" prong is satisfied. Id. at 22; citing Steel v. U.S., 813 F.2d 1545, 1549 (9th Cir. 1987).

### iii.    Whether the Exercise of Jurisdiction Over BV-HKL Would be Reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

BV-HKL argues that it would be unreasonable for the Court to exercise personal jurisdiction over it because BV-HKL "has not purposefully injected itself into California's commerce in any significant way." Mot. at 10-11. BV-HKL argues that litigating this matter in California would be "enormously inconvenient" because BV-HKL is located in China, and has "absolutely no presence" in California. Id. at 11, see Roth, 942 F.2d at 623 (noting defendant's lack of agent or office within the forum in analyzing burden of litigation on defendant). BV-HKL also argues that the Court should be mindful of the significant burden BV-HKL would face in defending itself in a foreign legal system. Id. at 11, see Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). BV-HKL also argues that China and Hong Kong have a strong interest in adjudicating a dispute that involves its citizens and a plaintiff who chose to do business in China. BV-HKL argues that China or Hong Kong would provide plaintiff with efficient and appropriate legal rights and remedies. Reply at 7. BV-HKL further argues that all defendants have agreed to submit to jurisdiction in Hong Kong or China, and California should not be burdened with the expense of resolving a case involving foreign defendants and a plaintiff who manufactured its wares outside of California. Id. at 7-8.

Plaintiff responds that there is a "heavy burden on both domestic and foreign defendants in proving a 'compelling case' of unreasonableness to defeat jurisdiction." Opp'n at 22; see Dole Food Co., 303 F.3d 1104 at 1117. Specifically, plaintiff argues that (1) BV-HKL has made numerous purposeful contacts with California, including an alleged intentional tort; (2) "California has a strong interest in providing a forum for its residents and citizens who are tortiously injured"; (3) California is the most efficient forum because plaintiff and BVCPS-MA have offices in California and BV-HKL has offices within the United States; and (4) BV-HKL has not shown that a forum in Hong Kong or China could impose jurisdiction over the French or American defendants. Opp'n at 23, see Dole Food Co., 303 F.3d at 1115-1116. Plaintiff further argues that, because BV-HKL committed an intentional tort in California, local jurisdiction is presumptively not unreasonable. Id., citing Calder v. Jones, 465 U.S. 783, 790 (1984).

**iv.    Conclusion**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

The Court cannot conclude at this stage that it lacks specific jurisdiction over defendant. Plaintiff has set forth sufficient facts that BV-HKL purposefully availed itself of this forum, specifically through its consummation of a financial transaction with plaintiff in payment for an inspection allegedly performed by BV-Shanghai. Furthermore, to the extent that plaintiff has alleged that BV-HKL intentionally invoiced plaintiff based on an inspection report it knew contained misrepresentations, plaintiff has sufficiently alleged that defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." See Dole Food Co., 303 F.3d at1111. These allegations are sufficient to support a finding of specific jurisdiction. Furthermore, there is no question that plaintiff's claim arises out of these alleged contacts with the forum. Finally, the Court cannot say as a matter of law that it would be unreasonable for the Court to exercise jurisdiction over BV-HKL, given BV-HKL's contacts with the forum, the interest of California in providing a forum for plaintiff's suit, and the fact that some defendants – particularly those with offices in the United States – would not be unduly burdened in litigating here.

## 2.    Forum Non Conveniens

BV-HKL argues that, in the alternative, under the doctrine of *forum non conveniens*, the instant action would be more appropriately litigated in Hong Kong and/or China. Mot. at 11-12.

### a.    Whether Hong Kong and China are Suitable Alternative Forums

BV-HKL argues that Hong Kong and China are suitable alternative forums because BV-HKL is subject to service of process in Hong Kong and China, and because all of plaintiff's claims could be brought in Hong Kong and China and none of plaintiff's claims would be barred by the applicable statutes of limitations. Id. at 12-14. BV-HKL further argues that both Hong Kong and Chinese courts are able to apply U.S. law and both court systems provide a method of enforcing judgments through statutory and common law. Id. at 14. Finally, BV-HKL argues that Hong Kong is a viable forum because, as the United States Department of Justice has recognized, Hong Kong courts follow the English Common Law tradition and are permitted to refer to decisions from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

other common law jurisdictions, including the United States.  Id.

### b.    Private and Public Interest Factors

BV-HKL argues that the private interest factors weigh in favor of litigating the instant action in Hong Kong or China.  Mot. at 15.  BV-HKL argues that the vast majority of the evidence and witnesses are located in Hong Kong and China.  Id.  BV-HKL further argues that it is undisputed that the jackets were manufactured in China, and that the inspection occurred there.  Id.  Moreover, BV-HKL argues that witnesses, including workers at the factory,  are located in China.  Id.  BV-HKL argues that some non-party witnesses may not be subject to the subpoena power of the Court, and all potential witnesses residing in China would be significantly inconvenienced by having to testify in this Court.  Id.

In addition, BV-HKL argues that the Court should weigh the location of relevant documents and the fact that much of the documentation is in a foreign language.  Id., see Duha v. Agrium, Inc., 448 F.3d 867, 876 (6th Cir. 2006) (holding that district court erred by not weighing the "locations of documents and the impact of foreign languages when evaluating the ease-of-access factor").  BV-HKL argues that, because the majority of relevant documentation is in a foreign language and currently located in China, the cost of translation and transportation would be unduly burdensome  Id at 16.  BV-HKL further argues that, as the litigation processes progresses through discovery, these difficulties will only increase, tipping the balance of private interest in favor of dismissal. Id.

Lastly, BV-HKL argues that California has no interest in plaintiff's suit.  Mot. at 16.  Accordingly, BV-HKL argues that the case should be dismissed so that plaintiff can re-file in a more appropriate forum.  Id.

Plaintiff responds that "choice of forum ordinarily will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country. Opp'n at 24.

Plaintiff argues that the "private interest" factors weigh against dismissal because, contrary to BV-HKL's assertions, the majority of the important evidence and witnesses,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|----------|---------------------|------|----------------|

| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. |
|-------|------|

including plaintiff's employees and experts, witnesses who re-inspected, repaired and shipped the jackets, and witnesses at Costco are located in the United States. Id. Plaintiff further argues that witnesses located in Asia can be deposed in Hong Kong and documents can be transported via fax or courier. Id. Lastly, plaintiff argues that document translation will be necessary regardless of venue, and can be performed in the United States. Id.

Plaintiff further argues that the "public interest" factors weigh against dismissal because California has a strong interest in the instant action due to the fact that California imports "billions of dollars worth of goods" from foreign countries. Id. Plaintiff argues that California has a strong interest in preventing foreign companies from committing intentional torts "that undermine or destroy the value of such goods." Id. Accordingly, plaintiff argues that dismissal would be improper. Id.

BV-HKL replies that plaintiff chose to manufacture the jackets in China. Furthermore, BV-HKL argues that plaintiff's opposition notes that the "defect was obvious to anyone who merely handled the jackets." Reply at 8, citing Opp'n at 25. BV-HKL argues that, if this contention is true, then defendants are entitled to investigate whether the factory itself where the jackets were originally manufactured committed fraud or collusion. Id. BV-HKL argues that such an investigation is beyond the subpoena power of this Court. Id. BV-HKL further argues that witnesses located in the United States will only testify to events that occurred after the subject inspection and report, not to the "crucial facts surrounding the manufacture and inspection of the jackets in China." Id. BV-HKL argues that plaintiff's opposition fails to address how discovery will be compelled against the factory, "the most critical witness in this case." Id. at 9.

The Court concludes that BV-HKL has failed to demonstrate that dismissal is appropriate on *forum non conveniens* grounds. The plaintiff's choice of forum will not be disturbed unless the private interest and public interest factors strongly favor trial in a foreign country. Id. BV-HKL has not shown that the balance of the private and public factors favors dismissal. See Dole Food Co., 303 F.3d at 1118. Although BV-HKL has argued that litigation in this forum would be inconvenient, and that certain evidence and witnesses may be located in China or Hong Kong, plaintiff has presented countervailing arguments indicating that there may be significant evidence and witnesses in the United States, and that California has an interest in litigating the instant action. Given that *forum*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

*non conveniens* is "an exceptional tool to be employed sparingly" the Court finds that BV-HKL has not met its burden of showing that dismissal is appropriate.  See Dole Food Co., 303 F.3d at 1118.

### 3.    Whether Plaintiff Failed to Join an Indispensable Party

BV-HKL argues that the factory that manufactured the jackets should be the "primary and key defendant in this matter and is therefore an indispensable party that must be joined."  Mot. at 17.  In particular, BV-HKL states that joinder of the factory is necessary to protect the named defendants because, if plaintiff obtains a judgment against defendants, then against the factory in a subsequent suit, the factory could then sue defendants for indemnity or contribution in the United States or China.  Reply at 9; see Fed. R. Civ. P. 19(a).  BV-HKL argues that because the factory does not have contacts with this forum and is not subject to service of process here, defendants are currently unable to implead the factory as a third party defendant, an action they might take if the matter was litigated in Hong Kong or China, where the factory would be subject to local jurisdiction.  Id.  BV-HKL argues that, because the named defendants cannot be found liable without considering the factory's role, and because the Court cannot compel the factory to participate in discovery, the instant action should be dismissed so that this suit can be brought in Hong Kong or China to ensure that all necessary parties are joined in the same action.  Id. at 9-10, 17-18.

Plaintiff responds that the factory is not an indispensable party because the instant action arises from defendants' failure to perform the final inspection and testing properly, not from the manufacturing of the jackets themselves.  Opp'n at 25.  Plaintiff argues that, even if defendants and the factory colluded in omitting the button defect from the reports, "the fact remains that it was Bureau Veritas that issued the report."  Id. at 26.  Plaintiff further argues that in fact full relief can be obtained from the named defendants, and the named defendants have asserted no claim against the factory.  Id.  Accordingly, plaintiff argues that the factory is not a required party under Rule 19.  Id. at 26.

Plaintiff also argues that impleader of the factory would in fact be feasible, because the factory has contacts with California via its contract with plaintiff to manufacture and deliver the jackets to California.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

The Court finds that BV-HKL has failed to demonstrate that the factory is an indispensible party to this action, such that joinder is necessary.  Complete relief can be afforded on plaintiff's claims regarding the inspection without joining the factory as a defendant.  Furthermore, nothing would prevent BV-HKL from pursing a claim for indemnity or contribution against the factory at a later date.  Therefore, BV-HKL's motion to dismiss for failure to join a party is denied.

**4.      Whether Plaintiff's TAC States a Valid Claim Against BV-HKL**

BV-HKL argues that plaintiff's claims against it fail because there was no relationship between plaintiff and BV-HKL, contractual or otherwise, sufficient to support any of plaintiff's claims.  Mot. at 19.  BV-HKL argues that the "Request" relied upon in plaintiff's TAC is "clearly, on its face, an agreement between plaintiff and Costco." Id.  Accordingly,  BV-HKL argues, as BVCPS-MA and BVCPS-HK argued in their motion, that plaintiff has not alleged the essential elements required to establish the existence of a valid contract against any of the defendants.  See Part III(A)(1).  BV-HKL further argues that plaintiff's claims for fraud and deceit and negligent misrepresentation fail to meet the heightened pleading standard of Fed. R. Civ. P. 9(b), for the reasons summarized in Part III(A)(2), supra.  Mot. at 21-22.  In addition, BV-HKL argues that plaintiff fails to plead the essential elements of its negligence claim, for the reasons summarized in Part III(A)(3), supra.  Id. at 22.  Lastly, BV-HKL argues that plaintiff's request for punitive damages fails and should be dismissed pursuant to Fed. R. Civ. P. 12(f), for the reasons summarized in Part III(A)(5), supra.  Id. at 22-23.

Plaintiff responds with many of the same arguments summarized in Part III(A), supra.  First, plaintiff argues that the TAC alleges, in "substantial detail," the BV/Costco contracts, which, plaintiff alleges, gave Costco the ability to act as defendants' agent in contracting with plaintiff.  Opp'n at 27.  Plaintiff argues that its TAC alleges that Costco followed the "BV/Vendor Procedure, thereby creating the testing contract between plaintiff and BV-HKL, either by writing or alternatively by conduct.  Id. at 28.

Plaintiff further argues that its TAC adequately alleges claims for fraud and negligent misrepresentation.  Opp'n at 29.  In addition,  plaintiff argues that even if the court finds that the moving defendants did not directly commit fraud, they are liable as alter-egos for BV-Shanghai.  Id. at 30.  Finally, plaintiff argues that even if BV-HKL did

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

not make intentional misrepresentations to plaintiff in supplying plaintiff with the inspection report, BV-HKL "had no reasonable grounds for believing the representations made to plaintiff were true." Id. at 31; citing TAC ¶ 190.

In addition, plaintiff argues that its TAC adequately alleges negligence by BV-HKL. Id. Plaintiff argues that, because the TAC alleges that BV-HKL: (1) was a party to the testing contract; (2) made representations to plaintiff prior to the inspection of the jackets via its agent, Costco; and (3) invoiced plaintiff on August 14, 2006, in time to take action to amend the report prior to the shipment of most of the jackets from China to California, plaintiff has adequately alleged a duty owed by BV-HKL to plaintiff. Id. Plaintiff further argues that BV-HKL is liable for the negligence of BV-Shanghai as its alter ego.

Moreover, plaintiff argues that its TAC adequately pleads punitive damage liability because the TAC pleads that BV-HKL was a direct participant in a scheme to profit based on Bureau Veritas's reputation for "purported 'ethics,' while simultaneously evading responsibility" for the allegedly unethical conduct of their employees. Id. at 32. Plaintiff argues that the moving defendants are among the named defendants who knew that the jackets contained defective buttons "in catastrophic numbers, and intentionally omitted this crucial fact from the report." Id., citing TAC ¶¶ 75-77. Plaintiff argues that such conduct is oppressive, fraudulent, malicious, contemptible and despicable and is supported by specific factual allegations. Id. Finally, plaintiff argues that the moving defendants are liable for punitive damages as alter egos of BV-Shanghai. Id.

Finally, plaintiff argues that its TAC adequately alleges alter ego liability on the part of BV-HKL, as in Section III(A)(4), supra. Id. at 28. Plaintiff argues that BV-HKL's silence on this issue is sufficient basis for denial of the entire motion. Id.; see Amer. Trading, 311 F. Supp. at 416.

In response, BV-HKL argues that plaintiff's theory of alter ego liability fails because plaintiff does not allege: (1) that inequity will result from dismissal of BV-HKL; (2) that BV-HKL is the "equitable owner" of the corporation such that "there is such a unity of interest and ownership between the corporation and the individual or organization controlling it that their separate personalities no longer exist;" or (3) any specific offending acts as required to establish alter ego liability under Fed. R. Civ. P.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2591CAS (JCx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Bleu Products, Inc. v. Bureau Veritas Consumer Product Services Inc., et al. | | |

9(b).  <u>Id.</u> at 10-11.  Accordingly, BV-HKL argues that plaintiff's TAC should be dismissed.  <u>Id.</u> at 11.

For the reasons set forth in Part III(A), *supra*, the Court concludes that BV-HKL has failed to establish that plaintiff cannot state a claim against defendants.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES defendants Bureau Veritas Consumer Products Services, Inc. and Bureau Veritas Consumer Product Services (Hong Kong) LTD's Motion to Dismiss and Motion to Strike Pursuant to Fed. R. Civ. P. 12(f). Furthermore, the Court DENIES defendant Bureau Veritas Hong Kong Ltd.'s Motion to Dismiss and Motion to Strike.

IT IS SO ORDERED.

|  | 00 | : | 06 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |